## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION
## CIVIL ACTION NO. 4:22-CV-00123-JHM

**LANCE CHRISTOPHER WHITE**                                                        **PLAINTIFF**

**v.**

**MIKE LEWIS, et al.**                                                                            **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the motions for summary judgment filed by Defendants Janet Culver and Leigh Garrett (collectively, Culver and Garrett) (DN 71), Scott Wilson (Wilson) (DN 72), and Brandon Lampton and Mike Lewis (collectively, the County Defendants) (DN 73). Plaintiff Lance Christopher White (Plaintiff) filed a response to the motions (DN 77), to which Culver and Garrett and the County Defendants replied (DNs 78, 19). Plaintiff has also filed a sur-reply (DN 80). For the following reasons, the motions for summary judgment will be granted.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was incarcerated as a pretrial detainee at the Hopkins County Jail (HCJ). He filed this *pro se* civil rights action under 42 U.S.C. § 1983 alleging that Jailer Mike Lewis, Deputy Brandon Lampton, Nurse Janet Culver, Nurse Leigh Garrett, and Dr. Scott Wilson[1] were deliberately indifferent to his medical needs in violation of the Fourteenth Amendment to the United States Constitution. (DN 1). On the Court's initial screening pursuant to 28 U.S.C. § 1915A, the Court dismissed the individual capacity claim against Lewis and allowed Plaintiff's Fourteenth Amendment claims to proceed against the remaining Defendants in their individual and official capacities. (DN 6).

---

[1] Culver, Garrett, and Wilson are employees of West Kentucky Correctional Healthcare (WKCH). (DN 6).

Plaintiff's complaint alleges that on March 27, 2022, he was engaged in a fight with another inmate who used a "hot pot" to break his jaw.  (DN 1, PageID.4).  Plaintiff alleges that the County Defendants did not allow him medical treatment for 19 hours until he was transported to Baptist Health Hospital, where it was determined he would need immediate surgery for his broken jaw.  (*Id.*, PageID.4-5).  The following day, Plaintiff was taken to University of Louisville Hospital for surgery.  (*Id.*, PageID.5).  Upon his return to HCJ, Plaintiff alleges that Culver would only allow him to take children's Tylenol for his pain, instead of the oxycodone that he had been prescribed following surgery at University of Louisville Hospital.  (*Id.*, PageID.5-6).

Plaintiff alleges that Garrett was indifferent to his medical needs by recording a "higher weight in my weight log book than what the scales read.  I believe this is done to keep my weight from being noticed as dropping."  (*Id.*, PageID.6).  Plaintiff further alleges that Garrett told Plaintiff's mother that "they can't have the jail strung out on opiates so they aren't giving me my pain medicine . . . . I was in extreme pain."  (*Id.*).

Finally, Plaintiff alleges that Wilson never came to see him after being struck with the hot pot.  As a result, Plaintiff sat for 19 hours "with blood pouring out of my mouth and in extreme pain.  He denied me pain medication."  (*Id.*).

Pursuant to the Court's Second Revised Scheduling Order (DN 56), discovery was certified as complete by all Defendants on October 30, 2023.  (DNs 60-72).[2]  Following an extension of time to file dispositive motions (DN 69), all Defendants filed motions for summary judgment.  (DNs 71-73).  Plaintiff responded (DN 77), and Culver and Garrett and the County Defendants filed replies.  (DNs 78, 79).  Plaintiff filed a sur-reply on March 13, 2024.  (DN 80).  The matter is therefore fully briefed and ripe for review.

---

[2] Plaintiff did not file such a certification of completeness with the Court.

## II.   MOTIONS FOR SUMMARY JUDGMENT

### A.   Nurses Culver and Garrett

Culver and Garrett seek summary judgment on Plaintiff's Fourteenth Amendment deliberate indifference claim on the grounds that: (1) Plaintiff failed to exhaust his administrative remedies; and (2) his claim fails on the merits for his failure to establish a sufficiently serious medical need (objective component) or that Culver and Garrett acted recklessly (subjective component) under the two-part standard for deliberate indifference. Alternatively, Culver and Garrett seek dismissal of Plaintiff's claims pursuant to Fed. R. Civ. P. 41(b) based upon his failure to certify completion of discovery in accordance with the Court's Second Revised Scheduling Order. (DN 71-1, PageID.341-350).

In support of their motion for summary judgment, Culver and Garret submit an undisputed record consisting of Plaintiff's deposition testimony; affidavits by Wilson, Culver, and Garrett; Plaintiff's HCJ medical questionnaire and facility admission report; medical records from Baptist Health Deaconess Emergency Department and University of Louisville Hospital; medical notes from HCJ; Health Services Encounters from Eastern Kentucky Correctional Complex and Roederer Correctional Complex; and Plaintiff's HCJ incident report and grievance history. (DNs 71-2—71-21).

### B.   Dr. Wilson

Wilson seeks summary judgment on the grounds that Plaintiff's "delay in treatment" and "denial of medication" theories underlying his Fourteenth Amendment deliberate indifference claim fail on the merits for Plaintiff's failure to produce evidence establishing either the objective or subjective components of the deliberate indifference standard. (DN 72-1, PageID.446-456).

In support thereof, Wilson submits an undisputed record consisting of Plaintiff's deposition testimony; Wilson's affidavit; Plaintiff's medical progress notes from HCJ; medical records from Baptist Health Deaconess Emergency Department and University of Louisville Hospital; and Plaintiff's HCJ incident report.  (DNs 72-2—72-9).

### C.      The County Defendants

The County Defendants seek summary judgment on the grounds that: (1) Plaintiff's Fourteenth Amendment deliberate indifference claim fails on the merits; (2) Plaintiff's official-capacity claims must be dismissed for Plaintiff's failure to identify a custom or policy by Hopkins County to deny opiate medication; (3) any claim against Lampton individually must be dismissed for lack of personal involvement; and (4) the County Defendants are entitled to qualified immunity.  (DN 73, PageID.520-532).

As part of their motion for summary judgment, the County Defendants submit Plaintiff's HCJ Incident Report; Plaintiff's medical progress notes from HCJ; Lewis' affidavit; a video recording of the incident from which Plaintiff's injury arose; audio recordings of Plaintiff's phone calls discussing his injury; Plaintiff's medical progress notes from HCJ; medical records from Baptist Health Deaconess Emergency Department and University of Louisville Hospital; and Plaintiff's grievance and general request history at HCJ.  (DNs 73-1–73-12).

### D.      Plaintiff's Response

Plaintiff has filed a response addressing the collective defendants' motions for summary judgment.  (DN 77).  Therein, Plaintiff argues that: (1) the video recording of the altercation leading to his jaw injury was "doctored;" (2) Plaintiff was a pretrial detainee housed with a state inmate; and (3) "audio from phone calls must have been erased because they say nothing." (DN 77, PageID.1105-1106).

### E.     Defendants' Replies

In their reply, Culver and Garret aver that Plaintiff has not controverted their motion for summary judgment, warranting judgment as a matter of law in their favor and dismissal of Plaintiff's claims.  (DN 78, PageID.1110).

The County Defendants have also filed a reply memorandum, in which they argue that: (1) Plaintiff has failed to respond to their substantive arguments, thereby waiving his claims against them; (2) Plaintiff has not produced any admissible evidence to support his claims that the HCJ video was doctored or altered; (3) Plaintiff has not produced any evidence to support his allegations of "corrupt nature and abuse of power" by the County Defendants; (4) Plaintiff does not explain the relevance of being housed with a state inmate; and (5) Plaintiff has failed to provide evidence that the audio recordings of the HCJ phone calls were altered.  (DN 79, PageID.1112-1115).

### F.     Plaintiff's Sur-reply

Plaintiff reiterates that the video and audio recordings submitted by the County Defendants have been altered, and such alterations portray his claims with "negative connotation" rather than substantiate them.  (DN 80, PageID.1117).

### III.    LEGAL STANDARD

Before the Court may grant a motion for summary judgment, it must find that there is "no genuine dispute as to any material fact" and that the moving party is "entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of specifying the basis for its motion and identifying that portion of the record that demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts

demonstrating a genuine issue of fact for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

Assuming the moving party satisfies its burden of production, the nonmovant "must—by deposition, answers to interrogatories, affidavits, and admissions on file—show specific facts that reveal a genuine issue for trial."  *Laster v. City of Kalamazoo*, 746 F.3d 714, 726 (6th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).   The non-moving party's evidence is to be believed, *Anderson*, 477 U.S. at 255, and all reasonable inferences that may be drawn from the facts placed before the Court must be drawn in favor of the party opposing summary judgment.  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

The fact that a plaintiff is *pro se* does not lessen his or her obligations under Rule 56. "The liberal treatment of pro se pleadings does not require the lenient treatment of substantive law, and the liberal standards that apply at the pleading stage do not apply after a case has progressed to the summary judgment stage."  *Johnson v. Stewart*, No. 08-1521, 2010 WL 8738105, at *3 (6th Cir. May 5, 2010) (citations omitted).

## IV. DISCUSSION

### A. *Section 1983, Generally and Exhaustion Requirement*

Section 1983 creates no substantive rights but merely provides remedies for deprivations of rights established elsewhere.  *Flint e x rel. Flint v. Ky. Dep't of Corr.*, 270 F.3d 340, 351 (6th Cir. 2001).  Two elements are required to state a claim under § 1983.  *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). "[A] plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

"Absent either element, a section 1983 claim will not lie." *Christy v. Randlett*, 932 F.2d 502, 504 (6th Cir. 1991).

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court, interpreting § 1997e, has expressly stated: "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007) (citing *Porter v. Nussle*, 534 U.S. 516, 524 (2002)). Failure to exhaust administrative remedies is an affirmative defense, which the defendant has the burden to plead and prove by a preponderance of the evidence. *Id.* at 216.

The PLRA requires exhaustion of internal remedies for "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532. To meet this requirement, an inmate must "properly" exhaust his remedies, which requires strict compliance with the grievance process provided by the prison. *Woodford v. Ngo*, 548 U.S. 81, 93-94 (2006). "Proper exhaustion" means that the plaintiff complied with the "agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. To establish that he has exhausted his administrative remedies, a prisoner-plaintiff must have presented his grievance(s) "through one complete round" of the established administrative process. *Thomas v. Woolum*, 337 F.3d 720, 733 (6th Cir. 2003), *overruled in part on other grounds by Woodford*, 548 U.S. at 87. "[A]n inmate does not exhaust available administrative remedies . . . when the inmate filed

such a grievance but 'did not appeal the denial of that complaint to the highest possible administrative level[.]'" *Id.* (quoting *Wright v. Morris*, 111 F.3d 414, 417 n.3 (6th Cir. 1997)). "'To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require.'" *Woodford*, 548 U.S. at 87 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002)).   The burden of a defendant asserting the affirmative defense of exhaustion is satisfied where the defendants produce an administrative policy that governs the filing of grievances and show that the plaintiff failed to fully exhaust his administrative remedies pursuant to the policy. *See Woodford*, 548 U.S. at 90.

### B.    *Fourteenth Amendment: Deliberate Indifference*

The Due Process Clause of the Fourteenth Amendment "forbids holding pretrial detainees in conditions that 'amount to punishment.'"   *Kingsley v. Hendrickson*, 576 U.S. 389, 405 (2015) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535 (1979)).   Therefore, when a pretrial detainee asserts a claim related to medical treatment, the claim is analyzed under the Fourteenth Amendment.   *Griffith v. Franklin Cnty.*, 975 F.3d 554, 566-67 (6th Cir. 2020) (citing *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018)).   The Fourteenth Amendment deliberate indifference standard has both an objective and a subjective component. *Helphenstine v. Lewis Cnty., Kentucky*, 60 F.4th 305, 316-317 (6th Cir. 2023), *cert. denied*, 144 S. Ct. 692 (2024).

As recently explained by the Sixth Circuit,

> The standard in this circuit to prove a deliberate-indifference claim brought under the Fourteenth Amendment by a pretrial detainee is clear. To make out such a claim, a plaintiff must demonstrate (1) an objectively serious medical need; and (2) that the defendants, analyzed individually, acted (or failed to act) intentionally and either ignored the serious medical need or "recklessly failed to act reasonably to mitigate the risk the serious medical need posed." *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty.*, 14 F.4th 585, 597 (6th Cir. 2021) *cert. denied*, —— U.S. ——, 143 S. Ct. 84, 214 L.Ed.2d 13 (2022)).

> Stated differently, a pretrial detainee must have a serious medical need, and the defendant must act, whether through intentional action or omission, recklessly in response to the need and the risk it presented to the detainee. *See Helphenstine*[,] 60 F.4th at 317.

*Grote v. Kenton Cnty.*, 85 F.4th 397, 405 (6th Cir. 2023); *see also Mercer v. Athens Cnty.*, 72 F.4th 152 (6th Cir. 2023) (discussing departure from analyzing Eighth and Fourteenth Amendment deliberate indifference claims under the same rubric following *Kingsley* and *Brawner, supra*).

Under the post-*Brawner* framework, the first question is whether the plaintiff had a serious medical need, which has been defined as "'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Vontz v. Hotaling*, No. 2:19-CV-12735, 2023 WL 2881350, at *6 (E.D. Mich. Mar. 6, 2023), *report and recommendation adopted*, No. 219CV12735TGBKGA, 2023 WL 2873347 (E.D. Mich. Apr. 10, 2023), *appeal dismissed* (July 11, 2023) (quoting *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004)) (other citations and quotations omitted).

"As to the second prong, it is important to note that *Brawner* did not change the principle that mere medical negligence, nor a disagreement between treater and patient as to the better course of treatment, does not equate to a constitutional violation, either under the Eighth or the Fourteenth Amendment." *Vontz*, 2023 WL 2881350, at *6 (citing *Brawner*, 14 F.4th at 596 (stating that a plaintiff must show "more than negligence"), and *Westlake v. Lucas*, 537 F.2d 857, 860, n.5 (6th Cir. 1976) ("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law.")) (other citations omitted)).

## C.      Nurses Culver and Garrett

Plaintiff alleges that Culver would not provide him with his prescribed narcotic pain medication (oxycodone) following his jaw surgery despite his jaw being "severely broken" and suffering "a great deal of pain."  (DN 1, PageID.5).  Plaintiff further alleges that Garrett "on 2 different occasions put down a higher weight in my weight log book than the scales read.  I believe this was done to keep my weight from being noticed as dropping."  (*Id.*, PageID.6). Plaintiff contends these actions amount to deliberate indifference to his serious medical needs. (*Id.*).

Culver and Garrett aver that Plaintiff's claims against them should be dismissed based on his failure to exhaust his administrative remedies as required by the PLRA.  (DN 71-1, PageID.342).  To that end, they point to the HCJ Inmate Rules and Regulations, which outlines HCJ's inmate grievance procedures.  *See* "Hopkins County Jail, Inmate Rules and Regulations" at 6, www.hopkinscountyjail.com/Documents/InmateRulesRegulations.pdf (last visited August 9, 2024).  The procedures provide that grievances may be filed on the inmate kiosk system for grievable issues, which include "[p]ersonal and social services needs, wrongful actions by staff, and violations of your rights."  *Id*.  "The Grievance Hearing Officer (GHO) has ten (10) working days to answer your grievance."  *Id*.  "If you are not satisfied with the disposition of the grievance by the GHO, you may submit a Grievance Appeal."  *Id*.  The three stages of the grievance appeal process, after the initial grievance, are as follows:

> Your first appeal will be submitted to the Administrative Sergeant. Your second appeal will be submitted to the Captain.  Your final appeal will be submitted to the Jailer.  Grievance Appeals must be completed within (48) forty-eight hours.  The appellate Grievance Hearing Officers have ten (10) working days to answer your grievance appeal.

*Id*.

The record reflects that on March 31, 2022, Plaintiff filed two medical grievances at 2:10 a.m. and 11:51 p.m., both asserting that he was being refused his pain medication by Culver.  (DN 71-20, PageID.436-437).  The grievance resolution advised Plaintiff that jail staff does not override any decisions made by the medical department.  (*Id*.).  The grievance history shows that Plaintiff filed a stage-one appeal from his 11:51 p.m. grievance and a stage-two appeal from his 2:10 a.m. grievance.  (*Id*.).  There is no evidence that Plaintiff filed a final stage-three, or "Jailer" appeal, for either grievance.  (*Id*.).

With respect to appealing the March 31, 2022 grievances relating to administration of pain medication, Plaintiff testified, "I'm not going to say I did all of them.  I know I didn't . . . . I had just given up appealing them."  (DN 71-2, PageID.366).   He acknowledged that, "[m]aybe I - - I did not appeal them enough or something."  (*Id*., PageID.380).

Here, to fully exhaust his administrative remedies as to his claim against Culver, Plaintiff was required to appeal the resolution of his initial grievances first to the Administrative Sargent, then to the Captain, and finally to the Jailer.  The record shows, and Plaintiff does not dispute, that he did not pursue a second-step Captain appeal or third-step Jailer appeal from his grievances regarding pain medication.  Plaintiff's failure to follow the appeal procedures in accordance with the HCJ grievance policy means he did not comply with the PLRA's mandatory exhaustion requirement.  *See Thomas*, 337 F.3d at 726; *Woodford*, 548 U.S. at 90.  Accordingly, the record contains evidence satisfying Culver's burden of persuasion.  *Surles v. Andison*, 678 F.3d 452, 458 (6th Cir. 2012) (Defendant bears burden of production and persuasion on issue of exhaustion, which requires evidence showing the absence of a genuine dispute of fact as to whether plaintiff exhausted administrative remedies.).   There being no genuine dispute of

material fact that Plaintiff failed to exhaust his administrative remedies, Culver is entitled to summary judgment.

Likewise, Plaintiff's grievance history does not show the filing of grievance regarding Garrett incorrectly recording his weight.  (DN 71-20, PageID.436-437).  Plaintiff testified during his deposition that he did not remember if he filed a grievance on that matter: "obviously I don't have any hard proof of that, you know.  That may be why I failed to put it in the - - the grievance or requisitions if I did."  (DN 71-2, PageID.378-379).   Plaintiff then confirmed that "it is possible that I didn't [file a grievance]" relating to the weight documentation.  (*Id.*, PageID.379).  Plaintiff's response to Culver and Garrett's motion for summary judgment does not address exhaustion.  (DN 77).  It is therefore uncontroverted that Plaintiff did not fully avail himself of the HCJ grievance procedure relating to Garrett.  On these facts, no reasonable jury could find that Plaintiff exhausted his claim that Garrett erroneously documented his weight in his HCJ medical file.  As Plaintiff's claim is unexhausted, Garrett is entitled to summary judgment.  *See Thomas*, 337 F.3d at 726 ("[W]e have clearly held that an inmate does not exhaust available administrative remedies when the inmate entirely fails to invoke the prison's grievance procedure[.]") (citing *Hartsfield v. Vidor*, 199 F.3d 305, 308–09 (6th Cir. 1999), and *Brown v. Toombs*, 139 F.3d 1102, 1104 (6th Cir. 1998), *cert. denied*, 525 U.S. 833 (1998)).

There is no genuine dispute of material fact, then, that Plaintiff did not exhaust his administrative remedies as 42 U.S.C. § 1997e(a) requires, and Culver and Garrett are entitled to summary judgment on the deliberate indifference claims against them.[3]

---

[3] In light of this determination, the Court need not address Culver and Garrett's remaining arguments.

**B.      *The County Defendants***

Plaintiff alleges that Lampton was deliberately indifferent to his serious medical needs when he was held for 19 hours before receiving treatment for his broken jaw.  (DN 1, PageID.4).  He also alleges that Lampton did not provide him with appropriate meals following his jaw surgery.  (*Id*., PageID.5).

The County Defendants seek summary judgment on the basis that Plaintiff's Fourteenth Amendment deliberate indifference claim fails on the merits.  Specifically, that Plaintiff has not provided proof establishing an objectively serious medical need or that the County Defendants acted to cause unnecessary or wanton infliction of pain.[4]  (DN 73, PageID.520-525).   The County Defendants further argue that Plaintiff's official-capacity claims must be dismissed for Plaintiff's failure to establish an underlying constitutional violation by the County Defendants, and for failure to establish an unconstitutional policy of Hopkins County.  (DN 73, PageID.525-527).  Alternatively, the County Defendants aver that they are entitled to qualified immunity.  (DN 73, PageID.528-531).  The Court examines the merits of Plaintiff's deliberate indifference claim.

1.      Serious Medical Need

The County Defendants aver that Plaintiff has not produced medical or expert proof that his condition worsened due to the alleged 19-hour delay in treatment, and therefore cannot establish the objective component of the deliberate indifference standard.  (DN 73, PageID.522).  They cite to *Napier v. Madison County, Ky*., 238 F.3d 739, 742 (6th Cir. 2001), for the

---

[4] In their memorandum, the County Defendants rely on *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), and *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988), to analyze Plaintiff's claim, noting that both Eighth and Fourteenth Amendment claims are "governed by the same deliberate indifference standards."  (DN 73, PageID.524).  Although such an interpretation would not change the outcome in this case, the Sixth Circuit has explicitly adopted a modified subjective prong for Fourteenth Amendment claims, as discussed above. *See Grote*, 85 F.4th at 405 (observing that "the level of culpability with which a defendant must act to establish deliberate indifference to pretrial detainees is lower than that necessary for convicted incarcerated individuals.") (citing *Brawner*, 14 F.4th at 596).

proposition that a plaintiff required to place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment. (*Id.*).

As stated earlier, to satisfy the objective prong of a deliberate indifference claim, a plaintiff must show that his medical needs were sufficiently serious. The Sixth Circuit recognizes "two distinct methods for establishing the objective component" of a deliberate indifference claim:

> A medical need may be sufficiently serious if it "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Blackmore*, 390 F.3d at 897 (citation omitted). This stems from the premise that, if the need for medical treatment is so obvious, "the delay alone in providing medical care creates a substantial risk of serious harm." *Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) (quoting *Blackmore*, 390 F.3d at 899). However, if a medical need is less obvious, its seriousness is evaluated under a different standard: the effect of delay in treatment. *See id*. And the "effect of the delay standard" requires the submission of verifying medical evidence to establish "the detrimental effect of the delay in medical treatment." *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) [citing *Napier*, 238 F.3d at 742.] A prisoner's allegation that a prison has failed to treat his condition adequately falls into the second category of cases, and thus, is evaluated under the effect-of-delay standard.

*Anthony v. Swanson*, 701 F. App'x 460, 463 (6th Cir. 2017) (observing that, even if a medical condition is obvious and requires treatment, the obviousness standard does not apply to claims that the treatment received was inadequate); *see also Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) ("The obviousness standard refers to a doctor's attention, and thus is primarily applicable to claims of denial or delay of *any* medical treatment . . . .").

The uncontroverted record establishes the following: Plaintiff was involved in a physical altercation with another inmate in his cell at approximately 7:10 p.m. on March 26, 2022. (DN 73-1, PageID.535). Plaintiff was seen by medical staff on March 26, 2022, at 7:16 p.m. for "left-sided jaw pain related to altercation." (DN 73-3, PageID.545). Plaintiff exhibited swelling of

the left jaw with limited range of motion, "unable to fully open mouth," and "broken tooth, back bottom [left]."  (*Id*.).  His treatment plan, as written by medical staff, indicated "Panorex x-ray of jaw 1-3 stat," ibuprofen 600mg, and "NPO until x-ray results received, and send to ER if jaw broken/fx/dislocated, provide ice pack PRN for swelling."  (*Id*., PageID.540, 545).

Progress notes from 10:29 p.m. on March 26, 2022 state that "Mobilex [third-party mobile x-ray service] have nobody to send to facility to perform x-ray.  NP notified and states verbal order to send [inmate] to ER."  (*Id*., PageID.540).

At 11:05 p.m., the progress notes state, "[t]his nurse contacted Dr. S. Wilson and he states that x-ray does not need to be performed immediately and that it may wait until morning.  Mobilex contacted and x-ray scheduled stat for AM on 3/27/22.  Dr. Wilson gave orders for [inmate] to remain NPO until after x-ray is completed and cleared.  Custody staff notified and [inmate] placed in dry cell."  (*Id*.).

In the early morning hours of March 27, 2022, at 2:27 a.m., Plaintiff filed a medical grievance requesting medical assistance, stating, "my jaw is injured.  I'm almost certain it's broke . . . . I am spitting and swallowing lots of blood because my mouth keeps [filling] with it.  My throat is very dry and [sore]."  (DN 73-5, PageID.612).  It goes on to state that Plaintiff was denied water and ibuprofen, and that "nothing will be done until the doctor arrives is what I was told.  Said it would be tonight then they changed it to in morning[.]"  (*Id*.).  The grievance resolution states, "[m]edical has after care orders and has followed the Doctor's order for medication.  Again, the jail does not override medical / Doctor's orders."  (DN 73-5, PageID.612).

There is also a note dated March 27, 2022, which states, "Pt sent out to Baptist Health per Scott Wilson MD."  (DN 73-3, PageID.540).  Plaintiff was seen at Baptist Health Madisonville

Emergency Department on March 27, 2022, at 1:36 p.m.  (DN 72-8, PageID.89).  Plaintiff was found to have bilateral mandible fractures per CT scan and was transferred to University of Louisville Hospital for surgery, which was performed on March 28, 2022.  (DN 73-6, PageID.616, 645).

On March 29, 2022, upon his discharge from University of Louisville, Plaintiff returned to HCJ and was placed on medical observation.  (DN 73-7, PageID.1087).  The University of Louisville Hospital Discharge Instructions ordered a "mechanical soft diet."  (DN 73-6, PageID.617, 636).

Plaintiff filed a grievance on April 12, 2022, stating that his soup arrived cold which was "harder for me to consume due to the gelatin like substance," the mushroom soup he was served was "hardest for me to get down due to the mushrooms, I can't squeeze 'em between my teeth," and "the oatmeal has been mainly water no peanut butter.  I am fading away back here." (DN 73-10, PageID.1091).  The grievance resolution stated, "[m]edical is tracking your weight and you[ ] have not lost in the last week.  You will need to let the walk officer know about heating your soup."  (*Id.*).  Plaintiff filed a similar food-related grievance on April 29, 2022, stating, "I am concerned about the healing of my jaw[ ] due to the pressure and shifting that occurs while trying to suck chicken and mushrooms through my teeth."  (DN 73-12, PageID.1094).  The grievance resolution stated, "[t]here are no new orders from the doctor at this time."  (*Id.*).

According to Lewis' affidavit, "WKCH medical staff are charged with all medical decisions related to the care and treatment of inmates and detainees, and [HCJ] staff . . . do not override medical decisions made by WKCH medical staff or outside medical providers."

(DN 73-4, PageID.610).   In this regard, "Hopkins County Jail staff, including deputies like Brandon Lampton . . . are not provided with in depth medical education and training." (*Id.*).

The County Defendants argue that because Plaintiff received medical attention following the altercation, Plaintiff's claims should be analyzed under the "effect-of-delay" standard, requiring him to present verifying medical evidence establishing the detrimental effect of the delay in treatment. (DN 73, PageID.522). *See Anthony*, 701 F. App'x at 463; *Blackmore*, 390 F.3d at 898 (*Napier*'s verifying medical evidence requirement applies where deliberate indifference claim is "based on the prison's failure to treat a condition adequately"). Plaintiff does not argue otherwise.

Plaintiff's verified complaint[5] states that he was provided with one ibuprofen and was made to wait approximately 19 hours before being transferred to Baptist Health for x-rays. (DN 1, PageID.4). The County Defendants' evidence establishes that Plaintiff was seen by HCJ medical staff soon after his altercation and that x-rays were ordered. While his x-ray was pending, Plaintiff was provided with ibuprofen and ice packs. Due to the unavailability of a mobile x-ray contractor, Plaintiff's imaging was re-scheduled for the following day. That imaging was performed on March 27, 2022, and Plaintiff had surgery on his jaw on March 28, 2022. Plaintiff does not address or refute the County Defendants' evidence in this regard.

Even accepting the averments of Plaintiff's verified complaint as true, he has still not alleged, much less submitted medical evidence to show, that the delay in being transferred to the hospital or that the inadequacy of the treatment at HCJ resulted in additional injury. To the contrary, Plaintiff acknowledged in his deposition testimony that his jaw had healed, and he did not require any additional surgeries or procedures. Instead, he stated that his complaint was

---

[5] Statements in a verified complaint that are based on personal knowledge may function as the equivalent of affidavit statements for purposes of summary judgment. *Weberg v. Franks*, 229 F.3d 514, 526 n.13 (6th Cir. 2000); *Williams v. Browman*, 981 F.2d 901, 905 (6th Cir. 1992).

"about the handling of it . . . [w]hy I was left for approximately 19 hours . . . without sending me out.  I was in a lot of pain."  (DN 72-8, PageID.496-497, 501-502).  Inasmuch as Plaintiff seeks to argue that his unmanaged pain constitutes a detrimental effect of the delay in obtaining x-rays and access to pain medication until he arrived at the hospital, Plaintiff has submitted no verifying medical evidence and therefore cannot establish the objective component of the deliberate indifference standard.  *See Dixon v. Hall*, No. 14-6466, 2016 WL 11781885, at *3 (6th Cir. Apr. 5, 2016) ("Even if Dixon's pain constituted a serious medical need, he failed to present verifying medical evidence that the delay in providing him with pain medication, x-rays, or outside medical help caused any serious medical injury.").

Because Plaintiff presents no medical evidence suggesting that any delay in treatment had a detrimental effect, he has failed to establish a genuine dispute on the objective prong of the deliberate indifference test.

Even if Plaintiff could survive summary judgment on the objective component of the deliberate indifference analysis, he nonetheless fails raise a genuine dispute that Lampton acted with reckless disregard such to establish the modified subjective component.

### 2.   Reckless Disregard

To prove the subjective prong of deliberate indifference in the context of a pretrial detainee, a plaintiff must prove, "more than negligence but less than subjective intent— something akin to reckless disregard."  *Mercer*, 72 F.4th at 161 (internal quotation omitted). Each Defendant must be considered individually.  *Id.* at 161 ("We consider each defendant individually because we 'cannot "impute knowledge from one defendant to another[.]"'") (quoting *Greene v. Crawford Cnty.*, 22 F.4th 593, 607 (6th Cir. 2022) (in turn quoting *Speers v. Cnty. of Berrien*, 196 F. App'x 390, 394 (6th Cir. 2006)).

Plaintiff alleges that he asked Lampton to request pain medication and something to drink from medical staff. (DN 1, PageID.4). According to Plaintiff, Lampton responded that "the nurse says no water or medicine, doctors orders." (*Id*.). Plaintiff states he then spent 19 hours with his jaw broken while he waited for medical treatment. (*Id*.). Plaintiff further alleges that, following his jaw surgery, Lampton was deliberately indifferent to his "medical and calori[c] needs" because the soup he was given was "not heated properly," and painful to consume "due to my mouth being banded shut." (*Id*., PageID.5). Additionally, Plaintiff states that his "morning mix was all water. Hardly any oatmeal or peanut butter." (*Id*.).

Assuming Lampton was present while Plaintiff was held without food or medication pending x-ray availability, the Sixth Circuit has recognized that generally "a non-medically trained officer does not act with deliberate indifference to an inmate's medical needs when he reasonably deferred to [a] medical professionals' opinions." *Greene*, 22 F.4th at 608 (internal quotations omitted); *see also Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands.") (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)); *Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same).

Here, it is undisputed that medical staff made the decision to hold Plaintiff overnight under NPO (nothing by mouth) orders until an x-ray became available, and Lampton, who is not medically trained, reasonably deferred to that medical determination. As such, there is no evidence of record from which a reasonable jury could find that Lampton acted intentionally to ignore a medical need, or recklessly failed to act reasonably to mitigate the risk the serious medical need posed to Plaintiff. *See Shaw v. McCracken Cnty. Fiscal Ct.*, No. 5:19-CV-45-BJB,

2024 WL 457165, at *7 (W.D. Ky. Feb. 6, 2024) (granting summary judgment on detainee's deliberate indifference claim where plaintiff "has not identified any record evidence regarding information known to—but ignored by—[Defendant] that should've led her to second guess the medical staff's prescribed treatment.").

With respect to Plaintiff's allegations against Lampton about the temperature and consistency of his soup, Plaintiff has not stated that Lampton was personally involved in providing Plaintiff with inadequate meals.  His complaint alleges only that Lampton is "over the kitchen," which the Court reads as supervising the kitchen staff responsible for preparing Plaintiff's meals.  (DN 1, PageID.5).

For a claim of supervisory liability, an "official's failure to supervise, control or train the offending individual is not actionable unless the supervisor 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'"  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)); *Chowning v. Hardin Cnty.*, No. 3:19-CV-509-CRS, 2022 WL 4636146 at *8 (W.D. Ky. Sept. 30, 2022) (citation omitted); *see Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (stating that supervisory liability "cannot be premised solely on a theory of *respondeat superior*, or the right to control employees." (citing *Hays*, 668 F.2d at 872).  There is no evidence that Lampton directed or was involved with the preparation of Plaintiff's meals, and thus he cannot be liable for any alleged misconduct by kitchen staff at HCJ.  *See, e.g.*, *Smith-El v. Steward*, 33 F. App'x 714, 716 (6th Cir. 2002) (Warden and deputy could not be held individually liable, under § 1983, for subordinate's alleged violation of prisoner's First Amendment right of access to courts based on *respondeat superior* theory where there was no evidence that defendants were directly involved in subordinate's decisions to return prisoner's

outgoing legal mail).  Plaintiff has not established Lampton's personal involvement with regard to his post-surgery food issues.[6]

Plaintiff has not raised a genuine dispute as to whether Lampton was deliberately indifferent to a serious medical need.  As such, Lampton has demonstrated entitlement to summary judgment on the claims against him, individually.

### C.    Dr. Wilson

Plaintiff alleges that Wilson did not attend to his medical needs after being struck in the jaw by another inmate.  As a result, Plaintiff sat for approximately 19 hours with his mouth bleeding and in extreme pain.  Further, Plaintiff alleges that Wilson denied his pain medication. (DN 1, PageID.6).

Wilson seeks summary judgment on the basis that Plaintiff's "delay in treatment" and "denial of medication" theories underlying his Fourteenth Amendment deliberate indifference claim fail on the merits for Plaintiff's failure to produce evidence establishing either the objective or subjective components of the deliberate indifference standard.[7]   (DN 72-1, PageID.446-456).

As relevant to Wilson, the undisputed record establishes that on March 26, 2022, Plaintiff was seen by medical staff at HCJ following the altercation and was treated with ibuprofen and ice packs pending an x-ray.  (DN 72-3, PageID.458-459).  Later that evening, Wilson ordered Plaintiff to be evaluated at the hospital on March 27, 2022, after the mobile x-ray contractor was unavailable the night of Plaintiff's altercation and resulting injury.  (*Id.*).

---

[6] In any event, Plaintiff does not submit proof that the temperature and consistency of his soup caused or contributed to his alleged injuries in any way.

[7] Wilson's argument relies upon application of the Eighth Amendment standard for deliberate indifference. (DN 72-1, PageID.446-447).

A CT scan at Baptist Health on March 27, 2022 showed "acute displaced fracture of the right mandibular neck with mild communition, with coexisting fracture of the left angle of the mandible."  (DN 72-5, PageID.464).  Plaintiff was transferred to the University at Louisville Hospital on March 28, 2022 for surgical intervention ("open reduction internal fixation mandible").  (DN 72-6, PageID.482).  Plaintiff was discharged on March 29, 2022, with orders for an oral antibiotic, antibiotic mouthwash, and oxycodone, a narcotic pain medication, PRN or as needed.  (*Id.*, PageID.481).

According to Wilson's affidavit, "[t]here is no blanket prohibition on providing inmates with narcotic medication at the Hopkins County Jail.  Instead, use of narcotics is decided on a case-by-case basis, considering the patient's complaints and ability to receive other pain medication to control his or her pain."  (DN 72-9, PageID.507).  Wilson further attests:

> In this case, there were discussions between or among the nurses, myself, and one of the advanced medical providers working underneath me about Mr. White's oxycodone prescription.  As part of that discussion, we would have determined whether or not the PRN narcotic medication was necessary to treat Mr. White's pain. Some of the factors considered in this determination were the course of Mr. White's recovery, his objective medical evaluations, and subjective reports of the tolerance of any pain involved.  Based on these and other consideration, I and one of the advanced medical practitioners decided that it was not necessary to treat Mr. White's pain with this strong narcotic, particularly when his pain could be controlled with over-the-counter medication.   The decision to forego narcotic medication was supported by the professional standards for prescribing, dispensing, and administering controlled substances under 201 KAR 9:260.[8]

(*Id.*, PageID.508).

---

[8] 201 KAR 9:260 § (3)(1)(a)(1) provides, *inter alia*, that a prescribing medical provider must obtain the appropriate medical history relevant to the complaint and conduct a physical examination.  A medically-appropriate decision is made after weighing the benefits and risks of the medication, and whether treatment of a controlled substance is necessary.  (*Id.*).

Wilson states that an HCJ medical practitioner, who is not a party to this action, conducted a physical examination of Plaintiff and reviewed his medical history to determine that over-the-counter medication was a medically-appropriate treatment. (*Id*.). That practitioner found that Plaintiff's pain did not reach a level that would necessitate the use of a controlled substance for pain management. After discussing it with the practitioner, Wilson opined that the determination was medically appropriate. (*Id*.). Wilson's affidavit is uncontested by Plaintiff.

Plaintiff testified that, after his surgery, he was given ibuprofen and children's Tylenol, which was liquid and "measured . . . for an adult." (DN 71-2, PageID.370). Plaintiff testified that even though he did not receive the prescribed oxycodone, his pain improved over time. (*Id*.). Plaintiff also testified that, following his treatment, he did not require additional surgery or medication to treat the bones of his jaw. (*Id*., PageID.389).

Medical notes from HCJ reveal that, following his jaw surgery, Plaintiff complained to medical staff of increased pain on April 1, 2022. At that time Plaintiff was provided 800mg of ibuprofen in addition to his existing Tylenol order. On April 4, 2022, Plaintiff reported "no issues[;] Tylenol working for pain relief" to medical staff. (DN 71-12, PageID.411).

### 1.   Serious Medical Need

As discussed earlier, Plaintiff has not presented any evidence, and the uncontroverted record does not support, a serious medical need premised upon the alleged 19-hour delay in obtaining x-rays. Plaintiff does not dispute that he was seen immediately by medical staff at HCJ following the incident and was evaluated at the hospital the next day. Plaintiff's disagreement, therefore, relates to the adequacy of his treatment, which requires verifying medical evidence to be placed in the record to establish that Plaintiff suffered a serious medical injury or that his condition worsened as a result of the delay. *See Anthony*, 701 F. App'x at 463;

*Blackmore*, 390 F.3d at 898.  As Plaintiff testified that his jaw has healed and requires no further treatment or intervention, and he provides no evidence suggesting otherwise, he cannot establish any detrimental effect from waiting 19 hours to receive x-rays.  He therefore fails to raise a genuine issue for trial on the objective component of his deliberate indifference claim.  *See Dixon*, 2016 WL 11781885, at *3 ("Even if Dixon's pain constituted a serious medical need, he failed to present verifying medical evidence that the delay in providing him with pain medication, x-rays, or outside medical help caused any serious medical injury.").

To the extent Plaintiff seeks to allege that the denial of oxycodone itself constitutes a serious medical need, there is no genuine dispute as to the objective component of the deliberate indifference test.  On the present record, no inference can be drawn that Plaintiff's jaw pain worsened, that the medication provided at HCJ was ineffective, or that he suffered any detriment or complication as a result of not being administered oxycodone.  And Plaintiff has placed no verifying medical evidence into the record to establish his need for certain medications and the effects of not getting them, which he is required to do when challenging the adequacy of his medical treatment.  *See, e.g., Rumsey v. Martin*, 28 F. App'x 500, 502 (6th Cir. 2002) (upholding grant of summary judgment where prisoner-plaintiff failed to prove that his condition deteriorated  because of a delay in filling his prescriptions).  The fact that Plaintiff was prescribed oxycodone by an outside provider, whose orders were not followed by Wilson, is insufficient to raise a genuine dispute for trial.  *See Carter v. Washington*, No. 23-1760, 2024 WL 3191094, at *5 (6th Cir. June 24, 2024) (affirming grant of summary judgment on deliberate indifference claim where prisoner-plaintiff alleged that physician-defendant denied an outside neurologist's prescription without evaluating him; "Carter failed to present medical evidence that

an increased dose of Neurontin was medically necessary or that the failure to increase his dose of Neurontin exacerbated his multiple sclerosis symptoms.").

 Even if Plaintiff could survive summary judgment on the objective component of the deliberate indifference analysis, he nonetheless fails raise a genuine dispute that Wilson acted with reckless disregard such to establish the modified subjective component as set forth below.

2.    Reckless Disregard

To satisfy the subjective component, a plaintiff must prove "more than negligence but less than subjective intent—something akin to reckless disregard." *Mercer*, 72 F.4th at 161 (internal quotation omitted).

The record does not evince Wilson's recklessness with respect to the 19-hour delay. Wilson determined that Plaintiff's x-ray could wait until the following day after the mobile x-ray service became unavailable the same evening.  He ordered Plaintiff to be seen at an area hospital less than 24 hours later.  Plaintiff, in contrast, presents no evidence establishing the presence of a genuine dispute that Wilson acted, "through intentional action or omission, recklessly in response to the need and the risk it presented" to Plaintiff.  *Helphenstine*, 60 F.4th at 314.

The Sixth Circuit has held that "the mere existence of delay in receiving treatment is not enough for a jury to find deliberate indifference" under the Eighth Amendment standard. *Santiago v. Ringle*, 734 F.3d 585, 593 (6th Cir. 2013).  Mindful that subjective element for pretrial detainees is less stringent under the Fourteenth Amendment, the facts of this case still do not raise a reasonable inference of reckless disregard, particularly in light of Wilson's unrefuted explanation for the delay.  *See*, *e.g.*, *Dorsey v. Davidson Cnty. Sheriff's Off.*, No. 3:10-0887, 2011 WL 3875867, at *5 (M.D. Tenn. Sept. 1, 2011), *report and recommendation adopted*, No. 3:10-0887, 2011 WL 4753523 (M.D. Tenn. Oct. 7, 2011) (applying Eighth Amendment

standard, finding "while the actions of Defendant Temple may have caused a slight delay in the plaintiff being seen at the medical clinic that day, Defendant Temple has offered an explanation for his actions which does not evidence deliberate indifference under the circumstances in existence at the time.  Without such evidence, there can be no finding of deliberate indifference on the part of Defendant Temple.").  Here, Wilson's decision to schedule Plaintiff's x-ray for the following day amounts to a medical judgment, which "federal courts are generally reluctant to second guess." *Westlake v. Lucas*, 537 F.2d 857, 860 n. 5 (6th Cir. 1976).  As such, there exists no genuine issue of fact as to whether Wilson acted intentionally to either ignore Plaintiff's serious medical need or recklessly failed to mitigate it.

The record also does not evince Wilson's recklessness with respect to Plaintiff's pain medication.  It shows that Plaintiff was prescribed oxycodone, PRN (as needed), upon discharge from University of Louisville following his jaw surgery.  In lieu of oxycodone, Plaintiff was provided with Tylenol and ibuprofen by medical staff at HCJ.  This decision followed a review of Plaintiff's physical examination and medical history by medical staff at HCJ, and under the guidance of Kentucky Administrative Regulations, Title 201, Chapter 9, Regulation 260, which governs "professional standards for prescribing, dispensing, and administering controlled substances."  (DN 72-9, PageID.508).  It was determined by Wilson and another medical provider at HCJ that conservative treatment was deemed appropriate because Plaintiff's "pain did not reach a level that would necessitate the use of a controlled substance for pain management." (*Id*.).

Plaintiff does not refute Wilson's affidavit, nor the reasoning underlying the determination to provide Plaintiff with over-the-counter pain medication.  As such, Wilson's decision to treat Plaintiff with Tylenol and ibuprofen was based on medical judgment that it

would be an appropriate substitute because it would just as effectively treat Plaintiff's pain. Plaintiff's complaint amounts to a disagreement with Wilson's decision to not provide him with the medication of his choice, which cannot form the basis of a deliberate indifference claim.  *See Hutchins v. Pollack*, No. 1:22-CV-950, 2024 WL 3290840, at *8 (W.D. Mich. Feb. 29, 2024), *report and recommendation adopted*, No. 1:22-CV-950, 2024 WL 2827831 (W.D. Mich. June 4, 2024) (pretrial detainee's contention that he should have been prescribed a particular medication was insufficient to satisfy the subjective component of the Fourteenth Amendment deliberate indifference standard); *see generally*, *Helphenstine*, 60 F.4th at 322 (post-*Brawner* Fourteenth Amendment deliberate indifference case observing that, generally, a patient's disagreement with physician's course of treatment alleges at most, medical malpractice and is not cognizable under § 1983).

Plaintiff has not raised a genuine dispute as to whether Wilson was deliberately indifferent to a serious medical need.  As such, Wilson has demonstrated entitlement to summary judgment on the claims against him, individually.

### D.    *Official-Capacity Claims*

As discussed in the Court's screening order, Plaintiff's official-capacity claims against Lampton and Lewis are against their employer, Hopkins County.  Likewise, his official capacity claims against Garrett, Culver, and White are against their employer, WKCH.  (DNs 1, 6).

The County Defendants seek dismissal of Plaintiff's official-capacity claims for failure to establish a violation of the Fourteenth Amendment, and for failure to identify an unconstitutional policy or practice of Hopkins County or HCJ.  (DN 73, PageID.526-527).

It is well-settled that a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the

alleged constitutional deprivation.  *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Deaton v. Montgomery Cnty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993).   To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy."  *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)).  The "policy or custom 'must be the moving force of the constitutional violation in order to establish the liability of a government body under § 1983.'"   *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cnty. v. Dodson*, 454 U.S. 312, 326 (1981) (quotation omitted)).

"Official-capacity suits . . .  'generally represent [ ] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell*, 436 U.S. at 691 n.55).  The same analysis that applies to a § 1983 claim against a municipality applies to a § 1983 claim against a private corporation, such as WKCH.[9] *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well.").  Therefore, liability of a contracted private entity also must be based on a policy or custom of the entity.  *Street*, 102 F.3d at 818.

As discussed above, Plaintiff has failed to raise a genuine dispute as to whether his Fourteenth Amendment rights were violated.  In the absence of an underlying constitutional violation, his § 1983 claim against the municipality or its contracted entity cannot succeed.  *See Johnson v. Gibson*, No. 4:19-CV-P174-JHM, 2021 WL 886230, at *6 (W.D. Ky. Mar. 9, 2021)

---

[9] "It is clear that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law." *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993) (quotation marks omitted), *abrogation on other grounds recognized by Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 559 (6th Cir. 2014).

("Plaintiff avers that HCDC and/or SHP had a policy of refusing to prescribe Gabapentin to inmates at HCDC.   However, the Sixth Circuit has held that neither a municipality, nor a contracted private entity such has SHP, can be liable unless the plaintiff establishes an underlying constitutional violation.") (citations omitted); *see also*, *Grote*, 85 F.4th at 414 (municipality cannot be held liable where a plaintiff suffered no constitutional harm).

The Court therefore finds that Hopkins County and WKCH are entitled to summary judgment as to any official-capacity claims brought against them by Plaintiff.

## V.   CONCLUSION

For the reasons set forth above, and the Court being otherwise sufficiently advised, **IT IS ORDERED** that the motions for summary judgment by Culver and Garrett (DN 71), Wilson (DN 72), and the County Defendants (DN 73) are **GRANTED**.   All federal claims against all Defendants are dismissed with prejudice.   The Court will enter a Judgment consistent with this Memorandum Opinion and Order.

Date:   September 4, 2024

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc:   Plaintiff, *pro se*
      Counsel of record
4414.015

29